IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

TROY CUNNINGHAM,

                                        Plaintiff,

      v.

THE KITCHEN COLLECTION, LLC,

                                        Defendant.

Case No. 4:17-cv-00770

## JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

Plaintiff, Troy Cunningham, individually and on behalf of all other similarly situated ("Plaintiffs") and Defendant, The Kitchen Collection, LLC ("Defendant" and collectively referred to as the "Parties"), by and through their respective attorneys, have reported to the Court that the Parties have reached a resolution of this matter. The Parties hereby move for approval of their Joint Stipulation and Release (the "Settlement Agreement") and request that the Court enter their Stipulated Judgment and order the dismissal of this case with prejudice.

The facts, arguments, and legal authority in support of the parties' Motion are contained in their Memorandum of Law in Support of Joint Motion for Approval of FLSA Collective Action Settlement, which is being filed simultaneously and incorporated herein by reference. For the reasons set forth therein, the parties submit that the Settlement Agreement is fair and reasonable, and the Court should approve the agreement.

WHEREFORE, the Parties pray the Court approve the Settlement Agreement as requested, and enter a Stipulated Judgment directing consummation of the Settlement Agreement and dismiss the case with prejudice.

Respectfully submitted this 25th day of April, 2019.

| By: _s/ Camar R. Jones_ | By: _s/ John B. Brown_ |
|---|---|
| Alan L. Quiles | John B. Brown |
| SBN:  24075418 | SBN:  00793412 |
| E-Mail:  aquiles@shavitzlaw.com | E-mail:  john.brown@ogletreedeakins.com |
| Gregg I. Shavitz (_pro hac vice_ approved) | **OGLETREE, DEAKINS, NASH, SMOAK &** |
| E-mail:  gshavitz@shavitzlaw.com | **STEWART, P.C.** |
| Camar R. Jones (_pro hac vice_ approved) | Preston Commons West 8117 Preston Road, |
| E-mail:  cjones@shavitzlaw.com | Suite 500 |
| **SHAVITZ LAW GROUP, P.A.** | Dallas, TX 75225 |
| 951 Yamato Rd., Suite 985 | Telephone:  (214) 987-3800 |
| Boca Raton, Florida 33431 | Facsimile:  (214) 987-3927 |
| Telephone: (561) 447-8888 | |
| Facsimile:  (561) 447-8831 | _Attorneys for Defendant_ |
| | |
| _Attorneys for Plaintiffs and the FLSA_ | |
| _Collective_ | |

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

TROY CUNNINGHAM,

                     Plaintiff,

    v.

THE KITCHEN COLLECTION, LLC,

                 Defendant.

Case No. 4:17-cv-00770

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

## I.      INTRODUCTION

On October 26, 2017, Plaintiff, Troy Cunningham (the "Named Plaintiff") filed this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), alleging that Defendant The Kitchen Collection, LLC ("TKC" or "Defendant") failed to pay him and others similarly situated, overtime compensation during the time they were employed as salaried, exempt-classified Store Managers ("SMs") (the "Lawsuit"). [Dkt. No. 1].  Since the filing of this action, 89 other SMs have joined the action in addition to the Named Plaintiff.

Following careful investigation, as well as: (a) contested motion practice as to conditional certification [Dkt. No. 10], Defendant's Rule 12(b)(1) Motion to Dismiss [Dkt. No. 27], Plaintiff's Motion for Sanctions relating to Defendant's Motion to Dismiss [Dkt. No. 34], and Plaintiff's Motion for Equitable Tolling [Dkt. No. 22]; (b) discovery, including formal written discovery, depositions of the Named Plaintiff, and Opt In Plaintiff, Katie McMullen, exchanging almost 2,500 pages of documents, including personnel files, job descriptions, policy documents, time records, and payroll data; (c) attendance at a full-day mediation conference; and (d) exhaustive post-mediation settlement negotiations after mediation did not result in a settlement, the Parties have finally agreed, subject to Court approval, to resolve the collective action overtime claims asserted in the Lawsuit.

For the reasons explained in detail below, the Parties request this Court to enter an Order, in the proposed form attached hereto as **Exhibit 1** approving: (i) the settlement set forth in the Joint Stipulation and Release ("Settlement Agreement") attached hereto as **Exhibit 2**; (ii) the Parties' proposed notice and the mailing of the Notice and Settlement Check attached hereto as **Exhibit 3**; (iii) appointment of Rust Consulting, Inc. as the Claims Administrator and its fees and costs for issuing the Notice and the Settlement Checks; (iv) approving the service awards to Named Plaintiff and Opt In Plaintiff McMullen; and (v) Plaintiffs' Counsel's request for reasonable

attorneys' fees and reimbursement of costs and expenses.

## II.     FACTUAL BACKGROUND

### A.     Factual Allegations

TKC is a national retailer specializing in the sale of bakeware, cookware, small appliances, ceramics and kitchen gadgets.   TKC operates over 200 locations across the United States. https://www.kitchencollection.com/about-us/ (April 24, 2019).  Plaintiffs allege that their actual day-to-day duties did not constitute exempt work under the FLSA.  Specifically, Plaintiffs allege that TKC improperly classified them and other SMs as exempt from the overtime provisions of the FLSA and did not pay them overtime for hours worked over 40 hours per week. TKC, on the other hand, denies any liability or wrongdoing of any kind, and contends that at all times, SMs were properly classified as exempt under the FLSA. TKC further contended that even if SMs were misclassified, it required SMs to accurately record the times they worked in TKC's timekeeping system, and the time records for Plaintiffs regularly showed weeks in which SMs worked less than 40 hours because of holidays, paid time off, and limited store hours depending on the store location.

### B.     Overview of Litigation and Settlement Negotiations.

Plaintiff filed his Complaint on October 26, 2017. [Dkt. No. 1]. Thereafter, another former SM, Katie McMullen, opted into the Litigation by filing her Consent to Join.  [Dkt. No. 2].[1] Defendant filed its Answer and Affirmative Defenses to Plaintiff's Complaint on December 7, 2017 asserting 13 Affirmative Defenses. [Dkt. No. 5].  Defendant's main defense was that Plaintiff and similarly situated employees were exempt from overtime pursuant to the FLSA's executive and administrative exemptions.

---

[1] Another former SM, Christina Howard, filed a Consent to Join this action as well. [Dkt. No. 8]. However, she decided to withdraw her Consent to Join on April 9, 2018. [Dkt. No. 24].

On February 6, 2018, Plaintiff proceeded with filing his Motion to Conditionally Certify Collective Action [Dkt. No. 10].  Before responding to the Motion, Defendant deposed the Named Plaintiff, and Opt In Plaintiff McMullen, each of which lasted a full day.  Defendant responded to the Motion for Conditional Certification [Dkt. No. 28], and Plaintiff replied in support of the Motion. [Dkt. 33].   While the Motion for Conditional Certification was pending, 6 other SMs joined this action: Mark Kent, Krista Fogal, Cindy Zimbrich, Carol Toler, and Stephanie Spears. [Dkt. Nos. 41,45, 46, 47, 51].   While the Motion for Conditional certification was pending, Defendant filed a Motion to Dismiss the Named Plaintiff's claims on the basis that Defendant tendered payment of all overtime damages Named Plaintiff could potentially be owed, and as a result, Named Plaintiff's claims were moot.  [Dkt. No. 27].  The Court denied the Motion to Dismiss, and conditionally certified a collective consisting of:

> All persons who are or have been employed by The Kitchen Collection, LLC as Store Managers ("SMs"), and who were subject to classification as salaried employees, at any time during the three-year period preceding the date of the Court's Order granting the Motion.

[Dkt. No. 42].  Notice and Consent Forms were issued to approximately 213 current and former SMs and ultimately, 84 additional individuals opted into the Litigation, resulting in a total of 90 plaintiffs, including the Named Plaintiff.  Every Opt-In Plaintiff executed the same Consent to Join form, which stated that each such individual designated the Shavitz Law Group, P.A. to ". . . represent me and make decisions on my behalf concerning the litigation *and any settlement*.  I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable." (emphasis added). [*See, e.g.,* Dkt. Nos. 48 and 48-1].

The Parties agreed to a second phase discovery plan, and filed a Stipulation Regarding Second Phase Discovery. [Dkt. No. 69].  Under the discovery plan, Defendant would be allowed to serve written discovery on, and depose 10 Opt In Plaintiffs.  Plaintiffs would also be allowed to

depose each Discovery Opt In's direct supervisor.  However, before proceeding with second phase discovery, the parties attended mediation on January 16, 2019 in Dallas, Texas, with an experienced wage and hour mediator, William H. Lemons, Esq.  The parties were unable to resolve the matter at mediation.  Plaintiff noticed the deposition of Defendant's corporate representatives, which was scheduled for February 27, 2019.   Noticing that the parties had potentially 20 depositions to attend, written discovery to which they had to respond (including on behalf of the 10 Discovery Opt Ins), and thousands of pages of documents and electronically stored information ("ESI") to produce and review in preparation for the depositions, the parties continued their settlement discussions after mediation. After a month of post-mediation discussions, the parties were able to reach a settlement.

In reaching this settlement, the parties considered the substantial risks they both faced, and the expenses already incurred after 18 months of litigation, and the expenses to be incurred going forward. TKC intended to file a Motion for Decertification at the close of second phase discovery. TKC maintains there were differences in job duties and responsibilities of SMs that provided a substantial hurdle for Plaintiffs at decertification.  Further, even if the collective members survived a forthcoming decertification motion and a motion for summary judgment, TKC maintains the differences and the merits of TKC's defenses made victory at trial and recovery less than certain and a third year of liability unlikely. Plaintiffs disagreed with TKC's assertion, maintaining that the evidence thus far demonstrated a uniform misclassification of the SM position.  Further, the evidence to date, and the interviews with the Opt In Plaintiffs indicate that TKC misclassified the SMs as exempt from overtime, including the fact that TKC reclassified the position to non-exempt on January 1, 2018.  Plaintiffs also maintain that a third-year of liability was also likely because Defendant's reclassification of the SM position indicated that Defendant knew the SM position

was improperly classified as exempt.

The Parties have finalized the Settlement Agreement as well as the instant motion. The Parties respectfully request that this Court approve and enforce the terms of the proposed Settlement Agreement[2].

## III.    PROPOSED SETTLEMENT TERMS

### A.    The Settlement Checks & Allocation Formula.

The parties agreed to settle for ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████.

This is not a common fund case where a claim form must be submitted to receive a check. In consideration for settlement and a release of all FLSA claims of the Eligible Settlement Class Members against Defendant, each Plaintiff and Opt-In Plaintiff shall receive a Settlement Check as set forth in Paragraph 3.4D of the attached Settlement Agreement. Ex. 2, ¶ 3.4D. An individual's Settlement Check will be for a share of the Net Fund and is calculated as follows:

> All Eligible Settlement Class Members shall be assigned 1 point for each of his or her Eligible Workweeks. Each Eligible Workweek within the Eligible Settlement Class Member's 2-year statute of limitations shall receive one full point of credit, and each Eligible Workweek within the Eligible Settlement Class Member's 3-year statute of limitations shall receive 1/3 point of credit.

---

[2] Capitalized terms are defined in the Parties' Stipulation and Settlement Agreement (*see* Exhibit 2) and carry those same definitions herein.

To calculate each Plaintiff's proportionate share:

(a)     Add all points for all Eligible Settlement Class Members together to obtain the "Denominator";

(b)     Divide the number of points for each Eligible Settlement Class Members by the Denominator to obtain each Eligible Settlement Class Members "Portion of the Net Settlement Fund";

(c)     Multiply each Eligible Settlement Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to obtain their Settlement Check amount.

50% of the payment to an Eligible Settlement Class Member will be treated as back wages and 50% of such payment will be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.  Ex. 2, ¶ 3.4E1. The 50% portion of the Eligible Settlement Class Members' Settlement Check that is treated as owed wages will be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax.  Ex. 2, ¶ 3.4E2.  This portion of the Settlement Check will be reported under the Eligible Settlement Class Member's Social Security Number on an IRS Form W-2.  *Id.*  The remaining 50% liquidated damages portion of the Eligible Settlement Class Members' Settlement Check shall be made without withholdings and shall be reported as earned in the year of payment to the IRS. *Id.*  This portion of the Settlement Check will be reported under the Eligible Settlement Class Member's name and Social Security Number on an IRS Form 1099. *Id.*

B.     **Service Award Checks.**

In addition to the overtime Settlement Checks detailed above, to acknowledge their service to the Opt-In Plaintiffs, the Named Plaintiff is eligible for a Service Award of ████, and Opt In Plaintiff McMullen is eligible for a Service Award of ████. Ex. 2, ¶ 3.3(A). To receive a Service Award, the Named Plaintiff and Opt In Plaintiff McMullen must sign the general release

as set forth in Paragraphs 3.3(B) and 4.3 of the Settlement Agreement. The Claims Administrator may not forward the Service Award to the Eligible Settlement Class Member until the Claims Administrator receives a copy of the fully signed general release and all revocation periods have expired without revocation.

### C.    Release

Eligible Settlement Class Members who participate in the settlement will release their overtime misclassification wage and hour claims that they have or may have under the FLSA during the time they worked as salaried, exempt-classified SMs through January 1, 2018.[3]   By negotiating, cashing, or depositing the Settlement Check, the Eligible Settlement Class Members will release the aforementioned claims.   The Notice mailed to the Eligible Settlement Class Members, and the reverse side of each Settlement Check, above the space for endorsement, will include the following settlement and release language in favor of TKC:

> By signing and cashing this check, I waive, release, and forever discharge TKC and its past, present, and future affiliates, parents, subsidiaries, predecessors, successors, and related companies and all of their respective past, present, and future officers, directors, employees, agents, insurers, executives, representatives, assigns, and attorneys from any overtime misclassification wage and hour claims I have or may have had under the FLSA during the time I worked as an exempt-classified Store Manager from the three (3) year period preceding my filing of a Consent to Join the Litigation to January 1, 2018.  This includes claims for liquidated damages, attorneys' fees, costs, and expenses.

*See* Ex. 2, at ¶ 4.1.

If the Eligible Settlement Class Member fails to cash his/her Settlement Check within the 90-day Acceptance Period of distribution, the uncashed check and the unclaimed funds shall revert to TKC. Ex. 2, ¶ 3.1(C). Any Eligible Settlement Class Member who does not timely sign and cash

---

[3] Effective January 1, 2018, Defendant reclassified all SMs as non-exempt.

a Settlement Check will not be bound by any release of claims. Ex. 2, ¶ 4.2.

**D.      Notice to the Opt-In Plaintiffs and Distribution of Settlement Checks.**

Within 49 days after the Court's issuance of an Approval Order, the Claims Administrator will mail a Notice along with the Settlement Check to each Eligible Settlement Class Member and, will mail to the Service Award recipients general release forms to execute and return to the Claims Administrator in exchange for Service Awards. Ex. 2, ¶ 2.8. Eligible Settlement Class Members are not required to do anything – such as, submit a claim form – to receive a Settlement Check.

The proposed Notice informs Eligible Settlement Class Members of the general terms of the settlement, the Eligible Settlement Class Member's individual settlement allocation, tax treatment of the Settlement Check, and the scope of the release. *See* Ex. 3. If an Eligible Settlement Class Member does not wish to participate in the settlement, the Notice advises the individual to simply not cash the Settlement Check. *See* Ex. 3.

Prior to mailing the Notice and Settlement Checks, the Stipulation and Settlement Agreement requires TKC to provide the Claims Administrator and Plaintiffs' Counsel the last known addresses, social security numbers, locations worked, dates of employment as exempt-classified SM, Opt In dates and Eligible Work Weeks for each Eligible Settlement Class Member. Ex. 3 at ¶ 2.6.  If any mailing of the Notice and Settlement Check(s) is returned to the Claims Administrator as undeliverable, the Settlement Agreement requires the Claims Administrator to perform a skip trace up to 2 times and resend the Notice and Settlement Check(s) based on the new address obtained. Ex. 1, ¶¶ 2.11.

**E.      Settlement Administrator Costs.**

The parties have retained Rust Consulting, Inc. to administer this settlement.  Subject to the Court's approval, the Claims Administrator's fee of ██████ will be paid from the Gross Fund.

9

F.      **Attorneys' Fees and Litigation Costs.**

Under the Stipulation and Settlement Agreement, and subject to Court approval, Plaintiffs' Counsel seeks ██████████ in attorneys' fees, plus reimbursement of ██████████ in out-of-pocket costs and expenses incurred in litigating and resolving this matter.  The attorneys' fees and costs incurred are set forth per the ledger in the Declaration of Plaintiffs' Counsel attached hereto as **Exhibit 4**, Plaintiffs' counsel spent over 480 hours prosecuting this case and have an actual lodestar in excess of $230,000.00.  Plaintiffs' counsel anticipates incurring an additional 25 hours or so to oversee the settlement process going forward and thus, ultimately lodestar will exceed $245,000.00, but in settlement, the separately negotiated fees sought are ██████████.

## ARGUMENT

IV.     **THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED.**

The decision to approve a class action settlement is left to the district court's sound discretion. *Lee v. Metrocare Servs*., 2015 WL 13729679, at *1 (N.D. Tex. July 1, 2015) (citing *Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004)). In many FLSA actions in the Fifth Circuit and throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include Rule 23 classes. *See e.g. Id; Jones v. JGC Dallas LLC*, 2014 WL 7332551, at *2 (N.D. Tex. Nov. 12, 2014). Collective actions under Section 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rules of Civil Procedure 23 class action. *Id*.

Unlike Rule 23, Section 216(b) does not require the standard preliminary approval proceedings, fairness hearings and final approval proceedings. *See Jones,* 2014 WL 7332551 at *3. Still, the Court has a duty to determine whether the proposed settlement is i) a fair and reasonable resolution of ii) a bona fide dispute over FLSA provisions. *Id.*at *2 (citing *Lynn's Food*

10

*Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 350, 1353 (11th Cir.1982)); *Sims,* 2012 WL 10862119 at *2. Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Lynn's Food Stores, Inc.,* 679 F.2d 350 at 1353. It is a well settled principle that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement". *See Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977).

> A.   ***Bona Fide* Dispute.**

The settlement occurred after 18 months of costly and time-consuming litigation and after the Parties engaged in contentious motion practice and depositions. During the entire process, Plaintiffs and TKC were represented by counsel experienced in wage and hour law. The settlement was the result of arm's length negotiations.

Recognizing the uncertain legal and factual issues involved, the expense of proceeding with representative discovery, the risks to both sides in briefing motions for decertification and summary judgment, the Parties reached the settlement pending before the Court. In short, this long-fought case reflects a bona fide dispute in a contested litigation, and as such, the settlement enjoys a presumption of fairness.   *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982); *Escalante v. STX Process Equip., LLC,* No. C-11-53 (S.D. Tex. Aug. 3, 2011) ("Where a settlement in an FLSA case reflects a reasonable compromise over issues in dispute, a court should approve the settlement in order to promote the policy of encouraging settlement of litigation.") (internal citations omitted); *Sims,* 2012 WL 10862119, at *3 (finding a bona fide dispute existed as a result of the filings, documentation, hearings, discovery and motions in a FLSA collective action); *Vassallo v. Goodman Networks, Inc.,* 2016 WL 6037847, at *1 (E.D. Tex. Oct.

14, 2016) (finding a bonafide dispute existed when the Parties disputed whether the plaintiffs were correctly classified as exempt under the FLSA).

**B.      The Settlement is a Fair and Reasonable Resolution.**

As a framework for determining what is fair and reasonable, courts in the Fifth Circuit consider the following factors in evaluating the fairness of a class action settlement:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Jones,* 2014 WL 7332551, at *4 (*citing Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982));

*Sims,* 2012 WL 10862119, at *3–4 (citing *Reed v. Gen. Motors Corp*., 703 F.2d 170, 172 (5th Cir.

1983)). When considering these factors, the Court also should keep in mind the presumption in favor of finding a settlement fair and the overriding public interest in favor of settlement. *Lee v. Metrocare Servs*., 2015 WL 13729679, at *3 (N.D. Tex. July 1, 2015) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

**i.      There is No Fraud or Collusion Behind the Settlement.**

"The Court may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Lee v. Metrocare Servs., 2015 WL 13729679, at *5 (N.D. Tex. July 1, 2015); Jones v. JGC Dallas LLC*, 2014 WL 7332551, at *2 (N.D. Tex. Nov. 12, 2014) (finding no evidence of fraud or collusion where "the settlement agreement was a result of arms-length negotiations by experienced counsel on both sides"). Here, there is no evidence of fraud or collusion. The settlement was the result of intense adversarial arm's length negotiations that took place after detailed investigation, discovery involving the production of over 2,500 records, depositions of the Named Plaintiff and Opt In Plaintiff McMullen, vigorous motion practice and

weeks of hard negotiations in finalizing the settlement agreement. Attorneys on both sides are experienced and specialize in wage and hour cases. Accordingly, the settlement agreement was not a product of fraud or collusion.

### ii.    Complexity, Length, and Expense of Further Litigation.

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the Parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Vassallo v. Goodman Networks, Inc.,* 2016 WL 6037847, at *2 (E.D. Tex. Oct. 14, 2016). This case is a complex, collective action that carried significant risks for the Parties as to both legal and factual issues. The Parties agreed to settle the case in order to avoid the burden, expense, and uncertainty of litigating Plaintiffs' claims on the eve of when numerous depositions in multiple states were scheduled to begin of both Plaintiffs and defense witnesses.  Defendant would have been required to incur the cost of producing and reviewing thousands of pages of ESI and other documents, preparing their witness(es) (including the Discovery Opt Ins' supervisors) for depositions and taking depositions of the discovery opt-ins.   Thereafter, the Parties would be required to prepare for the burden and expense and uncertainties of motions to decertify the collective and for summary judgment.

There is also no question that litigating the case to trial would require substantial time and expenses in addition to that already expended. A trial to be conducted relating to the claims of this many Opt-in Plaintiffs and the defenses raised by Defendant with respect to the collective poses its own set of complexities, ranging from various legal and factual issues and proof issues, but also to coordinating testifying Opt-ins from states across the country. Post-trial litigation, including appeals, would be a near certainty. It is safe to assume that trial preparation, trial and post-trial

litigation would consume another year or more of effort and expense before there would be finality in this already year and a half old litigation. (Dkt. No. 1). Thus, additional litigation undoubtedly would increase the expenses and complexity of this litigation.

### iii.    The Stage of the Proceeding and Amount of Discovery Completed.

The goal of the third factor – the stage of the proceedings and the amount of discovery – is to "evaluate whether 'the Parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Vassallo v. Goodman Networks, Inc.,* 2016 WL 6037847, at *2 (E.D. Tex. Oct. 14, 2016). This case was resolved after 18 months of hard-fought litigation.  Thus, the Parties fully and fairly evaluated the merits of their respective positions, and this factor favors approval of the settlement.

### iv.    The Probability of Plaintiffs' Success on the Merits.

Plaintiffs remain steadfast about the validity and merits of their claims. However, they acknowledge that risks remain regarding whether they ultimately would have prevailed on those claims. Those risks include defeating decertification motions, succeeding at the liability and damages phases of trial and post-trial motions and any appeals.  *Jones,* 2014 WL 7332551, at *4 (approving a FLSA collective settlement agreement when the issue of decertification was avoided because of the settlement).

### a.    Decertification

There is a risk that Defendant could succeed on its anticipated motion for decertification, which Defendant indicated its intention of filing at the close of second phase discovery. The Named Plaintiff and Opt-in Plaintiffs worked as SMs at various locations in 33 different states. TKC asserts that its stores vary by size, sales volume, layout, clientele, and staff, which directly impact the Plaintiff and Opt-In Plaintiffs' job duties.

TKC also asserts that the Plaintiff and Opt-in Plaintiffs each exercised independent judgment in managing their stores. For example, TKC maintains how each Opt-In Plaintiff chose to drive his/her store's business and hire, train, and coach his/her sales associates, was based on each Opt-in Plaintiffs' independent judgment and analysis of the business needs of his/her specific store. Thus, TKC would have asserted that decertification is appropriate because of the claimed factual disparity of the Opt-in Plaintiffs' claims and the separate proof necessary to establish whether, why, and how the Opt-in Plaintiffs performed their job duties. *See Proctor v. Allsups Convenience Stores, Inc.,* 250 F.R.D. 278, 282 (N.D. Tex. 2008).

### b.    Trial

If the Opt-In Plaintiffs had defeated a motion for decertification, the risk and uncertainty associated with trial would still remain.  TKC would have argued that these witnesses cannot be representative of the experiences of the other Opt-in Plaintiffs who worked at various different locations, and at different times during the recovery period. Additionally, Defendant would have again raised all of its defenses, including that the SMs qualified for the administrative and executive exemptions under the FLSA, among others. Defendant further contends that it has witnesses, company policies, and documents, that all support the exempt classification of SMs.

Nonetheless, Plaintiffs would have argued that they should prevail on the merits of their claim that they were misclassified, as they contend that evidence would demonstrate that so much of their time and duties included the same duties as hourly employees, such as assisting customers, working the cash register, and merchandising.  Additionally, Plaintiffs would have argued that SMs had little or no discretion in performing any of their duties, claiming that every aspect of the stores' operations was prescribed by TKC.  Plaintiffs would have further argued that Defendant's

reclassification of the SM position to non-exempt in January 2018 is evidence of Defendant's knowledge that the position was misclassified.

Ultimately, the parties have removed the uncertainty of trial by resolving this matter as outlined in this Settlement Agreement.

### c.      Appeal

There was also a risk that if Plaintiffs succeeded at the trial stage, Defendant would succeed on appeal. It is likely that Defendant would have appealed any adverse decertification rulings and trial rulings, resulting in further delay.

### v.      The Range of Recovery.

The settlement amount of ███████ is favorable and provides the collective action members significant consideration for their alleged claims. The settlement brings the Plaintiffs significant monetary value, now, not years from now, and provides certainty about the outcome. Here, the Parties also disagreed with whether a three-year or two-year statute of limitations applies, the application of the fluctuating workweek method of calculation, as well as whether liquidated damages would be recoverable by the Plaintiffs.  Defendant maintained that, even if Plaintiffs prevailed, Plaintiffs could not meet their burden to demonstrate that TKC's conduct was willful thereby triggering a third year of liability under the FLSA.  Nonetheless, for settlement purposes only, Plaintiffs were able to secure consideration for the third year of the statute of limitations period for Eligible Settlement Class Members. Therefore, each Plaintiff, even those with weeks worked only in the third year of the statute of limitations, recovers money and liquidated damages under the Settlement Agreement. Ex. 2, ¶ 3.4(D)(1).  Each Eligible Settlement Class Member will receive compensation for approximately ██████ of overtime for each week they worked as a SM during the period applicable to this settlement.  This was determined using 80% of the work weeks

at issue to account for paid time off and holidays during which SMs normally did not work over 40 hours per week.  An analysis of the time records Defendant produced for the Plaintiff and Opt-In Plaintiffs shows they worked an average of ███████ hours per week. Indeed, Defendant's time records showed a significant number of weeks during which SMs did not work any overtime because of holidays, paid time off, and the hours of operation of their stores.

The average amount payable to each Eligible Settlement Class Member is ███████.  This compares favorably to retail assistant manager cases, which are less challenging and complex than store manager claims such the instant action.  *See, e.g. Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-cv-2395) (S.D.N.Y.) (final approval obtained March 12, 2015 for $800,000 settlement for class of 689, averaging approximately $1,161 *gross* per putative class member); *Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.RI.) (assistant store manager settlement for $34 million, the average class member claimant *gross* recovery was $1,760, a result District Judge McConnell termed "magnificent" at the final approval hearing); *Craig v. Rite Aid Corp.*, 2013 U.S. Dist. LEXIS 2658, at *41 (M.D. Pa. Jan 7, 2013) (assistant manager settlement for $20.9 million, averaging approximately $1,845 *gross* per class member); *Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn.) (final approval obtained April 17, 2012 for $3 million for 1,921 class members averaging approximately $1,561 *gross* per putative class member); *Jenkins v. Sports Authority*, No. 09-cv-224 (E.D.N.Y) (final approval obtained September 30, 2011 for $990,000 settlement for class of 559, averaging approximately $1,771 *gross* per class member).  Moreover, the average awards in these assistant manager settlements were *gross* awards, inclusive of attorneys' fees, costs, service awards, and administration costs, which is not the case here. Further, the guarantee of payments within the next few months, rather than waiting for years of litigation and appeals, renders the value of this settlement even more compelling.

Although the maximum possible award at trial could be larger than the settlement amount, there was a significant chance it could also be lower, or non-existent. The inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages. *See e.g. Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (affirming a district court's approval of a settlement after properly comparing the settlement amount and the likely rewards the class would have received following a successful trial of the case); *Vassallo v. Goodman Networks, Inc.*, 2016 WL 6037847, at *3 (E.D. Tex. Oct. 14, 2016) (finding settlement of FLSA claims to be reasonable in light of uncertainties involved in the litigation when liability and the amount of damages were disputed by the Parties); *Tittle v. Enron Corp*., 228 F.R.D 541 (S.D. Tex. 2005) (approving a settlement amount below the possible recovery amount). Here, all Parties believe that the settlement amount is a reasonable and fair evaluation of the Plaintiffs' claims.

### vi.     The Opinions of Counsel.

The experience of the Parties' respective counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement. When reviewing settlement agreements, courts are "entitled to rely upon the judgment of experienced counsel for the Parties .... [and] absent fraud, collusion, or the like, [courts] should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977); *Jones,* 2014 WL 7332551 at *5.

The terms of the settlement agreement were approved by Plaintiffs, their counsel, TKC, and TKC's counsel. Exhibit 4, Declaration of Plaintiffs' Counsel.  Plaintiffs' Counsel had an immense amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the settlement. In lead counsel's opinion, the settlement is fair, reasonable, and

adequate. *Id.* Also, in the view of Plaintiffs' Counsel, the settlement provides substantial benefits

to the Plaintiffs, especially when one considers, among other things, the attendant expense, risks

of overcoming the exemption defense for the highest position in the store (store manager),

difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. *Id.* Because this

settlement is fair, adequate, and eminently reasonable, it should be approved. *See Murillo*, 921 F.

Supp. 443 at 445.

## V.     THE COURT SHOULD APPROVE THE NOTICE.

The Court should approve the proposed Notice attached as **Exhibit 3**.  The proposed Notice

sufficiently informs each Eligible Settlement Class Member of the general terms of the Stipulation

and Settlement Agreement, stating the amount allocated to the Eligible Settlement Class Member,

including the Settlement Check to which they are entitled, tax treatment of the award, the scope of

the release, and how to retain their claims and not participate in the settlement, if he/she so chooses.

*Koszyk v. Country Fin. a/k/a CC Servs., Inc*., 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016)

(approving class notice that, *inter alia*, described settlement terms and individual fee allocation);

*see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3

(D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options

facing class).

## VI.    THE ENHANCEMENT AWARDS TO PLAINTIFFS SHOULD BE APPROVED AS FAIR AND REASONABLE.

In recognition of their continuous service, their assistance in prosecuting the case, their

participation in written discovery including attendance at depositions, their availability for

multiple questions by counsel at inopportune times, their assistance in preparing Plaintiffs'

Counsel for mediation and their help in the ongoing investigation of their claims, the Parties have

designated Service Awards to the Named Plaintiff and Opt In Plaintiff McMullen in the amounts

of ███████ and ███████, respectively. (Ex 2, ¶ 3.3(A)).  In exchange for the Service Awards detailed in the Settlement Agreement, the Service Award recipients must execute a general release of all claims against TKC.

The proposed Service Awards are fair and reasonable. *See Lee v. Metrocare Servs.,* 2015 WL 13729679, at *4 (N.D. Tex. July 1, 2015) ("Service awards to class representatives are permissible where they are fair and reasonable."); *In re Heartland Payment Sys.,* 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts commonly permit payment to class representatives above the amounts received by class members generally). Further, awards, as the ones sought here, are warranted when the representatives have spent a significant amount of time assisting counsel and participating in the discovery process. *See e.g., Halleen v. Belk, Inc.*, No. 16-cv-00055, 2018 U.S. Dist. LEXIS 214015 (E.D. Tx. December 20, 2018) (approving service award to named plaintiffs in the amount of $7,500, and $1,000.00 to Opt In plaintiffs who testified in depositions); *In re Lease Oil Antitrust Litig. (No. II),* 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving awards of up to $10,000 per class representative); *Camp v. The Progressive Corp. et al.,* No. 01- 2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) (approving service awards to the class representatives in the amount of $10,000 each).

## VII.   ATTORNEY'S FEES AND COSTS.

Pursuant to 29 U.S.C. § 216(b), the Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses. In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the Parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Here, Plaintiffs' Counsel negotiated its attorneys' fees not be based on a percentage of the fund, but rather fees and costs were separately negotiated based on Plaintiffs' Counsel's lodestar in this litigation.  The fee agreed to by the parties is less than Plaintiffs' Counsel's "lodestar" fees.  "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black v. SettlePou, PC*, 732 F.3d 492, 502 (5th Cir. 2013) (citations omitted).  There is a strong presumption that the lodestar is a reasonable amount.  *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed 2d 494 (2010).

After the Court determines the lodestar, the Court must determine whether it should be adjusted based on the circumstances of the case and the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1988).[4]  The application of the *Johnson* factors to this case supports the reasonableness of the attorneys' fees sought in this case.

Plaintiffs' counsel—experienced labor and employment lawyers—dedicated a substantial amount of effort, time and labor to this case.  (Ex. 4, Plaintiffs' Counsel Declaration).  Named Plaintiff filed this case in October 2017, and since this lawsuit's inception, the litigation has been hotly contested every step of the way.  Defendant strongly disputed liability, asserted multiple defenses throughout the litigation, and even sought to have the action dismissed.  The parties

---

[4] The factors set forth in *Johnson* are: (1) the time and labor required, [*4] (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

fought very strongly and conducted extensive briefing over key motions, such as, Defendants Motion to Dismiss, Plaintiff's Motion for Conditional Certification, and Plaintiffs' Motion for Equitable Tolling.  (*See* Dkt. Nos. 10, 22 and 27).   Defendant took the depositions of the Named Plaintiff and Opt In Plaintiff McMullen, which required Plaintiffs' Counsel to travel from Boca Raton, Florida to Dallas, Texas, and Portland, Oregon, respectively.   The parties also served interrogatories and requests for production.   Throughout the discovery process, over 2,500 documents were produced.

After incurring significant expense, the parties attempted mediation of this case on January 16, 2019 before incurring additional costs on second phase discovery.  While post-notice mediation after the collective is defined in FLSA cases is frequently productive, in this case, the parties were unable to reach a settlement.  The parties began preparation for potentially 20 depositions of Opt Ins and supervisors, as well as Defendant's corporate representative depositions.   Seeing the significant work ahead, the parties continued their efforts at resolution, and were able to reach a settlement.

Here, the Parties separately negotiated Plaintiffs' Counsel fees of ▮▮▮▮▮▮ as attorneys' fees and an additional ▮▮▮▮▮ to reimburse Plaintiffs' Counsel's out-of-pocket costs.  Thus, the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the ▮▮▮▮▮ in separate payments to the Eligible Settlement Class Members.   Rather, the attorneys' fees and costs are above and beyond the amount to be paid to the Eligible Settlement Class Members, and were agreed upon after determining the backpay to the Plaintiff and opt-in Plaintiffs, such that their recoveries are not reduced due to the fees and costs incurred on their behalf. *See Daniels v. Prod. Mgmt. Indus., LLC*, 2018 U.S. Dist. LEXIS 76933, *10-11 (W.D. La.

April 20, 2018) (approving attorney fees in FLSA case as reasonable where they are paid separate and apart from the damages to plaintiffs and do not otherwise reduce the payment to plaintiffs).

The total lodestar to date for the work SLG performed representing the Eligible Settlement Class Members in this case is $234,911.00 for 484.1 hours of attorney and paralegal time spent prosecuting this case. Ex. 4, Plaintiffs' Counsel Declaration. The following chart is a summary of the time and effort invested by Plaintiffs' Counsel:

| Timekeeper | Rates | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $600 | 26.4 | $15,840.00 |
| Alan L. Quiles | $550 | 15.1 | $8,305.00 |
| Camar R. Jones | $520 | 290.8 | $151,216.00 |
| Christine Duignan | $550 | 98.6 | $54,230.00 |
| Paralegals | $100 | 53.2 | $5,320.00 |
| **Totals** | | **484.1** | **$234,911.00** |

This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in the detailed time records for each of the firms. The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery in the case and the work involved in negotiating and effectuating the settlement. As outlined above, the time and labor required in the prosecution of this case was substantial, considering the history of this case.

The hourly rates Plaintiffs' counsel seeks are reasonable considering SLG's expertise and familiarity and experience in FLSA collective action litigation. Ex. 4, Plaintiffs' Counsel Declaration. Indeed, these rates have been approved in this District. *See Halleen,* 2018 U.S. Dist. LEXIS 214015 at *16. "The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). Accordingly, Plaintiffs' request for attorneys' fees and costs should be approved. Detailed, reasonable, and necessary billing entries will be made available to the Court *in camera* should the Court so request. Plaintiffs'

counsel's request for payment of fees in the amount of ███████ represents a negative multiplier of ██.  Given the risks presented by this Lawsuit and the results obtained, the fee requested is decidedly reasonable.  Based on our experience, we also expect that there will be significant future time spent by Plaintiffs' counsel in administering the claims process and the settlement, resolving issues with the Settlement Claims Administrator and Defendants' counsel, and speaking with Eligible Class Members about the administration and the Settlement, bringing the multiplier even further below 1.  So, the time worked in the case alone demonstrates the reasonableness of the fee and expenses requested as part of the Settlement Agreement.  Defendants do not oppose the amount of attorneys' fees and costs as set forth in the Parties' Agreement.

In addition to the attorneys' fees sought above, Plaintiffs' Counsel seeks reimbursement of its out-of-pocket expenses in the amount of ██████ in satisfaction of the $24,900.45 actually incurred.  Like the attorneys' fee award, the amount sought is less than the costs and expenses actually incurred and anticipated in this litigation.  Plaintiffs' Counsel's actual out-of-pocket costs and expenses are summarized in the chart below:

| Expense | Amount |
|---|---|
| Filing and Court Fees (including pro hac vice applications for Camar R. Jones, Esq. and Gregg I. Shavitz, Esq.) | $600.00 |
| Service of Process | $91.84 |
| Court Reporter and Deposition Transcripts | $897.00 |
| Travel (including flights, ground transportation, parking and mileage) for Mediation and Depositions | $2,964.37 |
| Hotel accommodations for Depositions and Mediation | $2,163.69 |
| Postage/Courier | $211.55 |
| Notice Administration – Rust Consulting, Inc. | $13,000.00 |

| Plaintiffs' Portion of Mediator Fee | $4,972.00 |
|---|---|
| **Total** | **$24,900.45** |

The expenses incurred in the prosecution of this case are reflected on the books and records of Plaintiffs' counsel, which are summarized in the Plaintiffs' Counsel's Declaration attached as Ex. 4.  The costs described are accurate regarding all the expenses incurred; and constitute hard, out-of-pocket monetary expenses from the beginning of the case.

## VIII.   CONCLUSION

The Settlement is fair and reasonable, and parties respectfully request the Court   approve the Stipulation and Settlement Agreement, and enter the requested Stipulated Judgment.

WHEREFORE, the Parties pray the Court approve the Settlement as requested, and enter a Stipulated Judgment directing consummation of the Settlement Agreement and dismiss the case with prejudice.

Respectfully submitted this 25th day of April, 2019.

<table>
<tr>
<td>

By: <u>*s/ Camar R. Jones*</u>
Alan L. Quiles
SBN:  24075418
E-Mail:  aquiles@shavitzlaw.com
Gregg I. Shavitz (*pro hac vice* approved)
E-mail:  gshavitz@shavitzlaw.com
Camar R. Jones (*pro hac vice* approved)
E-mail:  cjones@shavitzlaw.com
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd., Suite 985
Boca Raton, Florida 33431
Telephone: (561) 447-8888
Facsimile:  (561) 447-8831

*Attorneys for Plaintiffs and the FLSA Collective*

</td>
<td>

By: <u>*s/ John B. Brown*</u>
John B. Brown
SBN:  00793412
E-mail:  john.brown@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West 8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone:  (214) 987-3800
Facsimile:  (214) 987-3927

*Attorneys for Defendant*

</td>
</tr>
</table>