# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TROY CUNNINGHAM | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-770 |
| | § | JUDGE MAZZANT |
| THE KITCHEN COLLECTION, LLC | § | |
| | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the Parties' Joint Motion for Approval of FLSA Collective Action Settlement (Dkt. #72), which the Magistrate Judge advised the Court to grant in her Report and Recommendation (Dkt. #79). After careful consideration, the Court adopts the Report and Recommendation for the reasons explained herein.

**I.    Settlement Approval[1]**

Generally, Fair Labor Standards Act ("FLSA") claims can be compromised only after a court reviews and approves the settlement. *See Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015). In the context of individual actions, the Fifth Circuit has "excepted, from this general rule, unsupervised settlements that are reached due to a bona fide FLSA dispute over hours worked or compensation owed." *Id.* (citing *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2015)). The Fifth Circuit has yet to decide the extent to which courts are to scrutinize FLSA class actions. But district courts in this circuit, including this one, have approved an FLSA class settlement only after determining whether the proposed settlement (1) resolves a bona dispute (2) in a fair and reasonable way. *See, e.g., Halleen v. Belk*, No. 4:16-cv-55-ALM, 2018 WL 6701278, at *1-*4 (E.D. Tex. Dec. 20, 2018); *Dyson v. Stuart Petroleum*

---
[1] The Court does not recite the background in this case, which is adequately laid out by the Report and Recommendation (Dkt. #79).

*Testers, Inc.*, No. 1-15-cv-282 RP, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016) (Pittman, J.) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008)); *Lee v. Metrocare Srvs.*, No. 3:13-cv-2349, 2015 WL 13729679, at *1 (N.D. Tex. July 1, 2015) (O'Connor, J.).

The first question is whether a bona fide dispute over hours worked or compensation owed exists. Plaintiff alleges that Defendant misclassified Store Managers ("SMs") under the FLSA, that SMs often worked over forty hours per week, and that Defendant failed to pay SMs overtime wages (Dkt. #1), allegations which Defendant denies (Dkt. #5). The Parties actively litigated this dispute. This includes contentious depositions and vigorously litigated motion practice, including a motion to conditionally certify class, which was granted in part and denied in part. *See Sims v. Housing Auth. City of El Paso*, No. EP-10-CV-109-PKC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011) (citing the adversarial posture between the parties as a reason to approve the settlement). A bona fide dispute exists as a result.

The Court must thus determine whether the class action settlement is fair and reasonable. "Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court approval to finalize a proposed class action settlement." *Id.* As a result, courts often utilize the Rule 23(e) standard to determine whether a FLSA collective action settlement is fair and reasonable. *Id.*; s*ee also Jones v. JGC Dall. LLC*, No. 3:11cv2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014).

> There are six focal facets [under Rule 23(e)]: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of

2

possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court addresses each of these factors in turn.

First, "[t]he Court may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Lee v. Metrocare Servs.*, 3:13-CV-2349-O, 2015 WL 13729679, at *5 (N.D. Tex. July 1, 2015) (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 725 (E.D. La. 2008)). The Court finds no evidence of fraud or collusion between counsel and, therefore, presumes that no fraud or collusion occurred between counsel.

Second, "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) (quoting *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004)). This case has been actively litigated thus far, and there is no reason to expect any different if the settlement is not approved. The Parties anticipate that they would spend the effort and absorb the cost of producing/reviewing thousands of pages of ESI and other documents, preparing witnesses for depositions, and further motion practice. There is also no question that, if the case proceeded to trial, this would impose high costs on all parties. Accordingly, the reasonableness of approving the parties' settlement is strengthened as ongoing litigation threatens to impose high costs of time and money.

The goal of the third factor is to "evaluate[ ] whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Klein*, 705 F. Supp. 2d at 653 (quoting *Ayers*, 358 F.3d at 369). As stated, the Parties have engaged in discovery, including two depositions, which allowed them to fully brief a motion for class certification in the eighteen months in which this case has been litigated (up to the proposed

settlement anyway). Consequently, the Court finds the parties have had the opportunity to evaluate the merits of their respective positions, and this factor favors approval of the settlement.

The fourth factor, which is the most important factor absent fraud and collusion, considers the probability of the plaintiffs' success on the merits. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). When analyzing this factor, courts must judge the terms of the proposed settlement against the probability that the class will succeed in obtaining a judgment following a trial on the merits. *Reed*, 703 F.2d at 172. However, the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* Plaintiffs acknowledge the risks inhibiting their ability to ultimately prevail on the merits, including, defeating decertification motions, succeeding at the liability and damages phases of trial, and on post-trial motions and a potential appeal. After all, the parties dispute whether the SMs were misclassified at all. The Settlement Agreement ensures that every class member will receive a fair and reasonable recovery based on a formula. It specifically provides each class member compensation for roughly three hours of overtime for each week they worked as an SM during the period applicable to settlement—just one hour less than the four hours Plaintiffs contend to have worked on average. Plaintiffs face considerable hurdles in succeeding on the merits, and the Settlement Agreement provides a fair and reasonable recovery. Therefore, the Court finds this factor weighs in favor of approving the Settlement Agreement.

The fifth factor examines the range of possible recovery by the class. This factor primarily concerns the adequacy of the proposed settlement. *See Ayers*, 358 F.3d at 370. The Parties disagree over whether a three-year or two-year statute of limitation applies, the application of the fluctuating workweek method of calculation, as well as whether Plaintiffs were entitled to liquidated damages. The Settlement Agreement resolves the uncertainty inherent in these disputes

4

in a way that seems fair and adequate. Class members are to receive monetary compensation representing overtime wages, covering a three-year period, assuming they worked overtime for 80% of the work weeks at issue. The 80% assumes that class members did not work overtime for paid time off and holidays, which is not an unreasonable assumption. Although the maximum possible award at trial could be larger than the settlement amount, there is also a significant chance it could be lower, or non-existent. Overall, the Settlement Agreement is adequate.

The sixth factor refers to the opinions of counsel and the class representatives.[2] This case has the benefit of experienced attorneys on both sides, who have negotiated settlements in other complex employment litigation, including class and collective action settlements. The parties and their attorneys agree that the settlement is a fair and reasonable resolution of a bona fide dispute. Therefore, this factor supports a finding in favor of approving the Settlement Agreement.

After considering the *Reed* factors, the Court finds that the Settlement Agreement should be approved because it is a fair and reasonable settlement of a bona fide dispute.

## II.     Notice Approval

Next, the Parties request the Court approve the proposed Notice of Settlement (the "Notice"). The Notice serves to inform each opt-in plaintiff of the general terms of the Settlement Agreement, stating the amount allocated to the opt-in plaintiff, the tax treatment of the award, the scope of the release, and how plaintiffs can retain their claims if they choose not to participate in the settlement. After reviewing the proposed Notice, the Court approves the Notice.

---

2. *See Vassallo v. Goodman Networks, Inc.*, 15CV97-LG-CMC, 2016 WL 6037847, at *3 n.2 (E.D. Tex. Oct. 14, 2016) (there is no need to consider the opinions of absent class members in FLSA cases as FLSA settlements have no impact on absent class members).

### III. Enhancement Awards

In addition to the settlement checks, the parties have allocated Enhancement Award Checks ("EACs") of $6,500.00 for the Named Plaintiff and $4,000.00 for Opt-In Plaintiff Katie McMullen, both of whom sat for depositions. "Service awards to class representatives are permissible where they are fair and reasonable." *Lee*, 2015 WL 13729679, at *4 (citing *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012)). The EACs here are lower in amount then the cited incentive awards found in similar cases and compensate the individuals for their additional time and service in this case. *See, e.g., Purdie v. Ace Cash Express, Inc.*, CIV.A. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving $16,665 incentive award to named plaintiffs for actively participating in the lawsuit); *Camp v. Progressive Corp.*, CIV.A. 01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (awarding up to $10,000 incentive payments to class representatives). Reviewing the EACs at issue, the Court finds them fair and reasonable considering the assistance provided by the Named Plaintiff and Opt-In Plaintiff McMullen.

### IV. Attorney Fees and Costs

Pursuant to 29 U.S.C. § 216(b), the parties request an award of attorneys' fees and costs for Plaintiff's Counsel. The Parties negotiated an agreed amount of attorneys' fees. The amount is based on Plaintiff's Counsel's lodestar fees, not on a percentage of the award to the Plaintiffs. Notably, the negotiated amount is lower than Plaintiff's Counsel's calculated lodestar fees.

"'[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees.'" *Dyson*, 2016 WL 815355, at *4 (quoting *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998)). In common fund cases, courts in the Fifth Circuit are permitted to use either the percentage method or the

lodestar method to calculate attorneys' fees. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).

The "lodestar" method is used to calculate attorneys' fees for purposes of fee awards. *See Tollett v. City of Kemah*, 285 F.3d 357, 367–68 (5th Cir. 2002). In calculating a lodestar, the number of hours reasonably expended by the attorneys are multiplied by an appropriate hourly rate in the community for such work. *See Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court then uses this as a benchmark and excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended. *Id.*

After calculating the lodestar, the Court may either: (1) accept the lodestar figure; or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (referring to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).[3] However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. *See Watkins*, 7 F.3d at 457.

### a. Hours Expended

The parties state that Plaintiff's Counsel expended 484.1 hours on this case and anticipates spending another 25 hours to administer the settlement. The attached declaration of attorney

---

3. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19.

7

Camar R. Jones details the extensive amount of work and time required to prosecute the case. This includes preparing the complaint, filing the motion to conditionally certify collective action, preparing for and defending depositions, preparing for additional discovery, and settling the case (*see* Dkt. #75, Exhibit 4 at pp. 3-4). Defendant does not dispute that Plaintiff's Counsel's reported hours are reasonable and accurate. Accordingly, the Court finds that the parties meet their burden of establishing that Plaintiff's Counsel reasonably expended 484.1 hours.[4]

## V. Hourly Rate

"[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett*, 285 F.3d at 368. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.* However, "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.,* 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972) ("The court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value.").

Plaintiff's Counsel and staff report hourly rates ranging between $100 and $600.00. Plaintiff's Counsel also describe their relevant backgrounds and represent that the hourly rates

---

4. Typically, the party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins*, 7 F.3d at 457. Mr. Jones provides charts summarizing the number of hours recorded by his firm, but does not provide the actual time records for the Court to review. The Court will not require Plaintiff's Counsel to submit the actual time records for three reasons. First, Plaintiff's Counsel testifies to expending 484.1 hours in the case after describing the tasks completed by Plaintiff's Counsel. Second, Defendants do not dispute the hours reported by Plaintiff's Counsel, and there is an incentive for Defendants to dispute the hours, as the attorneys' fees here are awarded separately, and not as a percentage of the fixed total award. *Dyson*, 2016 WL 815355, at *4 (Noting, "Defendants have no incentive to police attorneys' fees which are subtracted from a fixed total award . . . ."). Third, the requested attorneys' fees award is less than Plaintiff's Counsel's calculated lodestar amount, indicating to the Court that the parties have previously engaged in eliminating unnecessary hours recorded by Plaintiff's Counsel.

8

stated in their request are lower than the rates Plaintiff's Counsel normally charge in order to reflect reasonable, customary rates charged by other attorneys in the community. The evidence provided in Mr. Jones' declaration demonstrates that Plaintiff's Counsel are experienced labor and employment attorneys, who are well-versed in litigating complex FLSA collective actions.

Although it is clear from this evidence that Plaintiff's Counsel are highly qualified, the Court notes the hourly rates reported by Plaintiff's Counsel are relatively high for labor and employment attorneys located in the community.[5] However, Texas district courts have found hourly rates between $100 and $600 to be reasonable in FLSA cases after considering the experience of the lawyers, the reputation of the firm, and the complexity of the case. *See Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 810 (N.D. Tex. 2015), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016); *Aguayo v. Bassam Odeh, Inc.*, 3:13-CV-2951-B, 2016 WL 7178967, at *15 (N.D. Tex. Dec. 8, 2016). Further, as mentioned previously, the parties agreed to a lower attorneys' fee award than Plaintiff's Counsel's calculated lodestar. Accordingly, the Court finds the hourly rates reported by Plaintiff's Counsel to be reasonable in light of the attorneys' experience, the relevant rates for similar attorneys in this community, and the specific facts of this case.

Finding both the hours expended and hourly rates reasonable, the Court finds the lodestar calculated by the parties of $230,000.00 work to date and an additional $15,000 for work to administer the settlement to be accurate.

---

5. *See* STATE BAR OF TEXAS, 2015 HOURLY FACT SHEET (2015), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182

## VI. *Johnson* Factors

The lodestar is presumed to be reasonable and should only be modified in exceptional cases. *See Watkins*, 7 F.3d at 457. The Court may choose to accept the lodestar figure or decrease or enhance the figure after taking into account the *Johnson* factors cited above. Here, there is no need to consider the *Johnson* factors as the parties request an attorneys' fees award that is lower than the calculated lodestar amount.

## VII. Expenses

The parties also request that Plaintiff's Counsel be reimbursed $24,000.000 for expenses and costs for the amount specified in the Settlement Agreement, including $13,000 to be paid to Rust Consulting, Inc. for the role it would play as Claims Administrator. Plaintiff's incurred $24,900.45 in expenses and costs—a higher amount than what they seek in reimbursement in the Settlement Agreement. Given the duration and complexity of this case, the Court finds that the expense award agreed to by the parties in the Settlement Agreement is reasonable and should be approved.

## CONCLUSION

Having reviewed the Settlement Agreement (Dkt. #75-2), the Court is satisfied that it represents a reasonable compromise of the disputed claims in this action. Accordingly, the Joint Motion (Dkt. #72) is hereby **GRANTED**.

The Confidential Settlement Agreement (Dkt. #75-2 at p. 2) and Notice (Dkt. #75-2 at p. 21) are **APPROVED**.

Rust Consulting, Inc., is **APPROVED** as Claims Administrator, as are its fees and expenses associated with its role as Claims Administrator.

Additionally, the Service Awards to the Named Plaintiff Troy Cunningham and Opt-In Plaintiff McMullen are **APPROVED**.

Finally, Plaintiffs' attorney's fees and request for reimbursement of costs and expenses are **APPROVED**.

The Court will enter an order of dismissal by separate order. *See* FED. R. CIV. P. 58(a).

**IT IS SO ORDERED.**

**SIGNED this 3rd day of July, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE